UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:  0:21-cv-61210-SINGHAL/VALLE

JOHN G. BAJA, individually
and on behalf of all others
similarly-situated,

       Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

       Defendant.

_____/

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

Named Plaintiff, John G. Baja ("Baja" or "Named Plaintiff"), on behalf of himself and a putative Settlement Class (collectively, "Plaintiffs"), pursuant to Fed.R.Civ.P. 23, hereby moves this Court for an Order granting preliminary approval to the parties' proposed Class Action Settlement Agreement and Release (the "Agreement" or "Settlement");[1] preliminarily certifying the proposed Settlement Class for settlement purposes only; designating Named Plaintiff as the Class Representative and his attorneys as Class Counsel; approving the form and manner of the Notice of Settlement; authorizing the Settlement Administrator to disseminate the Notice of Settlement to the Settlement Class Members; setting a deadline for Settlement Class Members to opt out or object to the proposed Settlement; and scheduling a Final Approval Hearing no earlier than one hundred twenty (120) days after this Court's Preliminary Approval Order.

As explained further below, with the assistance of a highly respected ERISA and class action mediator, Named Plaintiff and Defendant Costco Wholesale Corporation ("Defendant") (collectively the "Parties") have reached a tentative class-wide resolution for which Named Plaintiff now seeks Court approval.  Specifically, the Settlement provides for Settlement

---

[1] The Agreement is attached as Exhibit "B."  Certain defined terms contained herein shall have the same meaning as set forth in the Agreement.

Payments to be made to approximately 38,818 Settlement Class Members.  The Settlement Administrator will create a non-reversionary Settlement Account, into which the Defendant will deposit a Gross Settlement amount of $750,000.00.  The Settlement Class Members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement.  Importantly, no funds will revert to Defendant.  Settlement Class Members are each entitled to *pro rata* gross amounts from the Settlement Account totaling approximately $19.32 with net Settlement Payments of approximately $9.72.[2]

These amounts are consistent with class action settlements in cases involving similar allegations under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") approved by other federal courts.  *See, e.g.*, *Vazquez v. Marriott Int'l, Inc.*, No. 8:17-cv-00116-MSS-MAP (M.D. Fla. Feb. 27, 2020), ECF. No. 127) (court approved class action settlement with gross recovery of $13.00 per class member in case with allegedly deficient COBRA notice); *Rigney v. Target Corp.*, No. 8:19-cv-01432-MSS-JSS (M.D. Fla. Mar. 24, 2021), ECF Nos. 58, 59 (court approved class action settlement with gross recovery of $17.00 per class member in case with allegedly deficient COBRA notice); *Hicks v. Lockheed Martin Corp, Inc.*, No. 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019) ECF No. 41 (court approved class action settlement with gross recovery of $24.00 per class member in case with allegedly deficient COBRA notice); *Gilbert v. SunTrust Banks, Inc.*, No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016), ECF No. 80 (court approved class action settlement with gross recovery of $32.00 per class member in case with allegedly deficient COBRA notice).

In sum, Named Plaintiff respectfully submits that the proposed Settlement is fair, reasonable, and adequate and asks that it be approved accordingly.  The Settlement was reached through arm's length negotiations conducted by experienced practitioners and with the assistance of a nationally respected class action mediator, Antonio Piazza, who has extensive experience mediating class action cases.  In further support thereof, Named Plaintiff states the following:

---

[2] Estimated net *pro rata* Settlement Payments to class members are calculated as follows: $750,000.00 Gross Settlement, less up to $250,000.00 (attorneys' fees), less up to $14,473.20 (litigation costs), less up to $10,000.00 (Named Plaintiff's General Release Payment), less $98,097.00 (estimated settlement administration costs), equals $377,429.80 (the Net Settlement Proceeds), divided by 38,818 estimated Settlement Class Members, equals approximately $9.72 (net Settlement Payment per Settlement Class Member).

I.      **BACKGROUND AND OVERVIEW OF MOTION.**

   A.      **Allegations Included in Named Plaintiff's Complaint.**

   This is a putative class action brought by Named Plaintiff against Defendant under 29 C.F.R. § 2590.606–4(b)(4) *et seq.* and 29 U.S.C. § 1166(a).  The lawsuit generally alleges that Defendant provided Named Plaintiff and other members of his putative class with a deficient COBRA Notice.  More specifically, Named Plaintiff asserts that Defendant's COBRA Notice did not adequately inform him and the putative class how to exercise their rights to elect COBRA coverage because, in violation of 29 C.F.R. § 2590.606–4 *et seq.*, Defendant's Notice: (i) included inaccurate and misleading threats of criminal penalties and fines; (ii) was not written in a manner calculated to be understood by the average plan participant; and (iii) did not name and provide contact information for the plan administrator.  As a result of the alleged violations in the Complaint, Named Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, and costs, on behalf of himself and a putative class of all others similarly-situated.

   B.      **Defendant's Defenses.**

   Had mediation been unsuccessful, Defendant had available to it myriad defenses to Named Plaintiff's allegations.  Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to Named Plaintiff and/or any putative class member.  In fact, as part of the Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in this case, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and Defendant denies that it has any liability whatsoever.  The Agreement and this Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity.  However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

   C.      **Procedural History of Case.**

   By way of further procedural background, Named Plaintiff John Baja filed his original Complaint on June 9, 2021.  (*See* Doc. 1).  Defendant filed a potentially dispositive Motion to

Dismiss on July 21, 2021, raising a variety of arguments, including lack of Article III standing and failure to state a claim. (*See* Doc. 7). Before the Court ruled on Defendant's Motion to Dismiss, Named Plaintiff filed a First Amended Complaint which, in turn, mooted the first Motion to Dismiss filed by Defendant. (*See* Docs. 14, 16).

The Parties conferred and filed the required Joint Scheduling Report on August 12, 2021. (Doc. 22). The next day, the Court entered its Scheduling Order. (Doc. 23).

Defendant filed a Motion to Dismiss the First Amended Complaint on August 18, 2021. (Doc. 24). On September 1, 2021, Named Plaintiff filed a comprehensive response in opposition to the Motion to Dismiss. (Doc. 25). Defendant filed its reply brief on September 8, 2021. (Doc. 27).

In the interim, Named Plaintiff propounded on Defendant class-wide written discovery on Defendant and began the process of scheduling depositions. Specifically, Named Plaintiff propounded on Defendant written discovery requests, a Fed.R.Civ.P. 30(b)(6) deposition notice, as well as notice of intent to serve a third-party subpoena.

Shortly thereafter, on September 17, 2021, Defendant filed a Motion to Stay Discovery. (Doc. 28). Named Plaintiff filed his opposition on September 24, 2021. (Doc. 30). The Court denied Defendant's Motion to Stay Discovery on September 27, 2021. (Doc. 31).

Following the denial of Defendant's Motion to Motion to Stay Discovery, counsel for both sides explored the possibility of an early class-wide resolution. Based on discussion between counsel for both sides, the Parties then agreed an early class-wide mediation may be productive at this point to try and resolve this case on a class basis.

As a result, on October 12, 2021, the Parties filed a Joint Motion to Stay these proceedings, including as to the Court's ruling on Defendant's pending Motion to Dismiss and as to the Parties' respective discovery obligations, pending completion of mediation. The Court granted that Motion on October 13, 2021 (*see* Doc. 35), and the case was stayed.

### D. <u>Settlement Negotiations and Mediation</u>.

The Parties attended a mediation before a highly respected mediator, Antonio Piazza, on December 1, 2021. After extensive arm's length negotiations—between experienced counsel for an entire day and into the evening—a tentative deal was reached. As a result of the agreement reached at mediation, the Parties agreed to enter into the Agreement, for which they now seek Court approval.

In sum, the Parties have agreed to fully and finally compromise, settle, and resolve all demands, claims, damages, and causes of action, present and future, arising from, related to, or based upon this litigation as to Named Plaintiff and all putative class members.

## II.     THE PROPOSED SETTLEMENT.

### A.     The Proposed Settlement Class.

The Agreement defines the proposed Settlement Class as follows: "All participants and beneficiaries in the Costco Employee Benefits Program who were sent the COBRA Notice by or on behalf of Defendant at any time during the Class Period [*i.e.*, between June 9, 2018 and June 9, 2021] who did not elect COBRA."

### B.     Benefits to the Settlement Class and Named Plaintiff.

The Agreement, if approved, will resolve all claims of Named Plaintiff and all Settlement Class Members in exchange for Defendant's agreement to pay $750,000.00 into the Settlement Account.  This is a "claims paid" non-reversionary settlement.  Every Settlement Class Member who does not timely opt out will receive a check for their respective Settlement Payment, without having to take any action, mailed to their last known address by the Settlement Administrator.

From the Settlement Account will be deducted amounts for the costs of settlement administration, Class Counsel's fees, and litigation costs, and any General Release Payment to Named Plaintiff, resulting in the "Net Settlement Proceeds," which will be allocated among the approximately 38,818 Settlement Class Members equally on a *pro rata* basis.  No funds revert to Defendant.  Any funds that are unclaimed (which shall only arise if/when a check is mailed but then not timely cashed) shall revert to a mutually agreeable *cy pres* recipient.  The Parties have selected Bay Area Legal Services, a 501(c)(3) non-profit legal aid organization, and will ask the Court to approve it as the *cy pres* recipient.

The Parties negotiated the proposed Settlement on a common fund basis, meaning that the Parties' settlement offers were inclusive of all attorneys' fees and costs, incentive awards, and administrative expenses.  The Parties did not negotiate attorneys' fees until after agreeing on all terms related to the size of the common settlement fund and the class definition.

With the Settlement Class comprised of approximately 38,818 members, each Settlement Class Member who does not opt out of the Settlement Class is entitled to a gross *pro rata* amount of the Settlement Account totaling approximately $19.32.  If the requested amounts are granted

for attorneys' fees and costs, administrative expenses, and Named Plaintiff's General Release Payment, the parties anticipate that each Settlement Class Member will receive a *pro rata* Settlement Payment from the Net Settlement Proceeds of approximately $9.72, an amount consistent with settlements in many other large COBRA notice class action cases like this one.

       **C.**    **Administration of Notice of Settlement.**

The Parties have agreed to utilize a private, third-party vendor, American Legal Claim Services, LLC, to administer the Settlement in this case, including but not limited to distribution of the Notice of Settlement.  The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Settlement Account.

Within ten (10) business days of the Court's preliminary approval of the Agreement, Defendant shall provide to the Settlement Administrator a list of the full names and last known mailing addresses of each Settlement Class Member.  Moreover, within ten (10) business days after receiving the list from Defendant, the Settlement Administrator shall mail the short form Notice of Settlement, (attached hereto as Exhibit C, and as Exhibit 1 to the Agreement), by first-class U.S. Mail to all Settlement Class Members.  The short form Notice of Settlement shall apprise the Settlement Class Members of the existence of the Agreement and of the Settlement Class Members' eligibility to recover their *pro rata* portion of the Net Settlement Proceeds and will include an explanation of the "claims paid" process, as well as an explanation as to what happens if the settlement checks are not timely cashed.  Namely, the uncashed funds will be made part of a donation to a mutually-agreeable *cy pres* recipient.

The Notice of Settlement also shall inform Settlement Class Members of: (1) the material terms of the Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Agreement if they do not opt out; (5) the date, time and location of the Final Approval Hearing scheduled by the Court (to be held at least 120 days after the Court's Order preliminarily approving the Settlement); and (6) that the Court retains the right to reschedule the Final Approval Hearing without further notice.

The Notice of Settlement in this case is modeled after notices to class members approved by other federal courts in cases involving deficient COBRA notices, including in *Rigney, et al. v. Target Corp.*, No. 8:19-cv-01432-MSS-JSS (M.D. Fla. July 14, 2020), ECF No. 49-4 and 49-4, 52; *see also Vazquez v. Marriott International, Inc.*, No. 8:17-cv-00116-MSS-MAP (M.D. Fla.

Feb. 27, 2020) ECF No. 127; *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 3, 2019), ECF Nos. 33-3, 33-4, and 34; *Carnegie v. FirstFleet Inc.,* No. 8:18-cv-01070-WFJ-CPT (M.D. Fla. Feb. 22, 2019) ECF Nos. 53-3, 55); *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-cv-00118-SDM-JSS (M.D. Fla. April 4, 2018) ECF Nos. 88-2, 89.

      **D.**      **Attorneys' Fees and Costs and Named Plaintiff's General Release Payment**.

Pursuant to the Agreement, Class Counsel is authorized to petition the Court for up to one-third of the Gross Settlement amount (*i.e.*, up to $250.000.00) as attorneys' fees, plus reasonable litigation costs (*i.e.*, up to $14,473.20). Named Plaintiff will file a separate motion seeking approval for Class Counsel's fees and costs at least fourteen (14) days prior to the Settlement Class Members' deadline to opt out or object to the Settlement. Defendant does not oppose the amount of fees and costs sought by Class Counsel, as specified above.

Additionally, Named Plaintiff, John G. Baja, is entitled to apply to the Court for a General Release Payment not to exceed $10,000. *See Twardosky v. Waste Management, Inc., et al.,* M.D. Fla. Case No.: 8:19-cv-02467-CEH-TGW (approving $10,000 general release payment in class action). Defendant does not oppose Named Plaintiff's General Release Payment application. Named Plaintiff will include his request for his General Release Payment in his motion for Class Counsel's fees and costs. Neither Settlement approval nor the size of the Gross Settlement amount are contingent upon Court approval of the full amount of Class Counsel's requested fees and costs, or approval of Named Plaintiff's General Release Payment.

      **E.**      **Class Action Fairness Act Notice**.

Defendant will submit the notices required by the Class Action Fairness Act of 2005 ("CAFA") to the appropriate Federal and State officials.

**III.**      **MOTION FOR PRELIMINARY APPROVAL AND SUPPORTING MEMORANDUM OF LAW**.

      **A.**      **Applicable Legal Standard**.

This action was settled prior to certification. A class may be certified "solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Woodward v. NOR–AM Chem. Co*., 1996 WL 1063670 *14 (S.D.Ala.1996), citing *In re Beef Indus. Antitrust Litig*., 607 F.2d 167, 173–78 (5th Cir.1979), cert. denied, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Supreme Court held that because a

settlement class action obviates a trial, the district judge deciding whether to certify a settlement class action "need not inquire whether the case, if tried, would present intractable management problems," under Rule 23(b)(3)(D).

Regardless of whether a class is certified for settlement or for trial, the Court must find these prerequisites are met: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). The proposed class must also meet the requirements of one of the three class types found in Rule 23(b).  In this case, Named Plaintiff seeks to have this case certified pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

**B.      The Requirements of Rule 23(a) are Met for Purposes of Approving the Proposed Settlement.**

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Named Plaintiff has satisfied all four requirements under Rule 23(a) for purposes of approving the proposed Settlement.

**1.      Numerosity.**

The proposed class of approximately 38,818 individuals is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that having more than 40 class members is generally enough to satisfy the rule." *Klewinowski v. MFP, Inc*., No. 8:13-cv-1204-T-33TBM, 2013 U.S. Dist. LEXIS 130591, at *4 (M.D. Fla. Sept. 12, 2013) (citing *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986)).  Here, there are approximately 38,818 members of the proposed Settlement Class. Thus, the numerosity standard is satisfied.

**2.      Commonality.**

Next, Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). "[T]his prerequisite does not mandate that all questions of law or fact be common; rather, a single common question of law or fact is sufficient to satisfy the

commonality requirement, as long as it affects all class members alike." *Klewinowski*, 2013 U.S. Dist. LEXIS 130591, at *5-6 (internal quotations and citations omitted); *see also Waters v. Cook's Pest Control, Inc*., 2012 U.S. Dist. LEXIS 99129, at *26-27 (N.D. Ala. July 17, 2012) (citing *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009)).

In this case, common questions of law and fact exist among Named Plaintiff and the proposed Settlement Class Members for purposes of approving the Settlement.  All were participants in or beneficiaries of the Plan, were sent copies of Defendant's allegedly deficient COBRA Notice, and did not elect COBRA continuation coverage following their receipt of that purportedly inadequate notice.  Such common issues of law and fact have been found to satisfy commonality in similar COBRA cases.  *Morris v. US Foods, Inc*., No. 8:20-CV-105-SDM-CPT, 2021 WL 2954741, at *5 (M.D. Fla. May 17, 2021); *Vazquez v. Marriott Int'l, Inc*., No. 817CV00116MSSMAP, 2018 WL 3860217, at *3 (M.D. Fla. Aug. 7, 2018) (certifying Rule 23 class in COBRA notice case and finding commonality satisfied based on same factors); *see also Pierce v. Visteon Corp.,* 2006 U.S. Dist. LEXIS 98847, at *12 (S.D. Ind. Sept. 14, 2006) (holding there was commonality where plaintiff challenged defendants' COBRA notice practices "as applied to the entire class").

Additional common issues exist in this case, including: (1) whether Defendant violated COBRA's notice requirements; (2) whether, and to what extent, statutory penalties are appropriate. Each Settlement Class Member received the allegedly inadequate COBRA Notice and, as such, would have an alleged claim for statutory penalties.  Named Plaintiff has established common questions of fact concerning whether the COBRA Notice complies with the law. Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied for purposes of approving the Settlement.

### 3.   **Typicality.**

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 157 n.13 (1982).  "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Rosario-Guerro*, 265 F.R.D. at 627 (citing *Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008).

Here, Named Plaintiff is typical of the Settlement Class members he seeks to represent, as he received the same COBRA Notice as the Settlement Class Members and his claims stem from that COBRA Notice. Indeed, whether a COBRA Notice provides adequate information is not based on an individual's understanding of the COBRA Notice, but rather, an objective determination of whether the Notice complies with the letter of the statute. *Rodriguez v. Int'l Coll. of Bus. and Tech.*, 364 F.Supp.2d 40, 46 (D.P.R. 2005) ("Neither a plaintiff's actual knowledge of his rights under COBRA nor his prior COBRA related job responsibility, dispenses with a plan administrator's obligation to give the employee [proper] notification") (citing *Torres-Negron, et al. v. Ramallo Bros. Printing Inc*., 203 F.Supp.2d 120, 124-125 (D.P.R. 2002)).

Thus, whether Defendant's contested COBRA Notice complies with the law does not depend on Named Plaintiff's personal characteristics but, rather, on whether the COBRA Notice is understandable by an average plan participant. 29 C.F.R. 2590.606-4(b)(4). This requirement has been interpreted as "an objective standard rather than requiring an inquiry into the subjective perception of the individual [plan] participants." *Wilson v. Sw. Bell Tel. Co.*, 55 F.3d 399, 407 (8th Cir. 1995) (interpreting regulatory requirements for Summary Plan Descriptions, which are subject to an identical regulatory requirement to be written in a manner calculated to be understood by the average plan participant).

In sum, Named Plaintiff's claims are typical of all Settlement Class Members and their resolution does not depend on Named Plaintiff's personal characteristics. *Vazquez*, 2018 WL 3860217, at *4. Accordingly, Rule 23(a)(3) is also satisfied for purposes of approving the Settlement. *See Pierce,* 2006 U.S. Dist. LEXIS 98847, at *13 (typicality met where "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory").

### 4.   <u>Adequacy</u>.

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "This requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist.

LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (citing *Busby v. JRHBW Realty, Inc*., 513 F.3d 1314, 1323 (11th Cir. 2008)).

In this case, Named Plaintiff—like each one of the Settlement Class Members—received the same allegedly deficient COBRA Notice from the same Defendant sometime between June 9, 2018 and June 9, 2021.  Thus, Named Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are allegedly entitled.  As such, Named Plaintiff does not have any interests antagonistic to those of the proposed Settlement Class.  Indeed, Named Plaintiff's pursuit of this litigation is evidence of the same.

Likewise, proposed Class Counsel—Brandon J. Hill and Luis A. Cabassa from Wenzel Fenton Cabassa, P.A., along with Marc Edelman from Morgan & Morgan, P.A.—have extensive experience litigating class actions of similar size, scope, and complexity to the instant action. They regularly engage in major complex litigation involving employment and consumer-related claims, including cases alleging deficient COBRA notices like this.  Class Counsel has the resources necessary to conduct litigation of this nature and have been appointed lead class counsel by federal courts throughout the country in more deficient COBRA notices cases than any other firms. *See generally* Declarations of Luis A. Cabassa, Brandon J. Hill, and Marc Edelman.

Further, proposed Class Counsel have devoted substantial resources to pursuing claims against Defendant for its allegedly unlawful COBRA Notice, including extensively litigating this matter, as described above, investigating Named Plaintiff's and the Settlement Class's claims, aggressively pursuing those claims through motion practice, conducting both formal and informal discovery (albeit much of it stayed pending settlement discussions and mediation), engaging in extensive settlement discussions, preparing for and attending mediation and, ultimately, negotiating the Settlement now before the Court.

In sum, both the proposed Class Representative and Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency. Accordingly, the adequacy requirement is also met for purposes of approving the Settlement.

### C.      The Requirements of Rule 23(b)(3) are Also Met.

In addition to satisfying Rule 23(a), parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem,* 521 U.S. at 623. Here, Named

Plaintiff seeks certification for the purposes of the Settlement under Rule 23(b)(3), which allows a class action to be maintained if: (1) questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3) for purposes of approving the Settlement.

### 1. Predominance.

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

In the present case, the common questions identified above predominate over any individualized issues. The central issues revolve around a standardized COBRA Notice that was common to all Settlement Class Members, whether that Notice complied with applicable statutory requirements and accompanying regulations, and whether Defendant should be required to pay statutory penalties for utilizing that allegedly deficient Notice.

In similar cases involving COBRA notices, courts have found that common issues predominated. *See, e.g., Hicks*, No. 8:19-cv-261-JSM-TGW, Doc. 34 (M.D. Fla.) (finding the predominance requirement satisfied in COBRA notice case); *Valdivieso*, No. 8:17-cv-118-SDM-JSS, Doc. 89 (M.D. Fla.) (same); *Morris v. US Foods, Inc.*, No. 8:20-CV-105-SDM-CPT, 2021 WL 2954741, at *6 (M.D. Fla. May 17, 2021) (same); *see also Vazquez*, 2018 WL 3860217, at *6 ("the resolution of whether the COBRA Notice complied with the law, however, does not break into individualized inquiries; rather, it is an objective determination and central to the resolution of any claims of any purported class members. Thus, the question of individual class members' motivations is irrelevant as to Defendant's liability for the allegedly inadequate COBRA notice.").

Because Defendant utilized a standardized COBRA Notice with respect to all members of the Settlement Class, Named Plaintiff's claims "will prevail or fail in unison," and as such, predominance is met for settlement purposes only. *Amgen Inc.*, 568 U.S. at 460.

### 2. Superiority.

Finally, the class action device is also the superior means of adjudicating this controversy because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of

decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. Actions alleging a standard course of wrongful conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity.

Here, all questions necessary to determine whether—for Settlement purposes— Defendant violated COBRA (and its accompanying regulations) are common to all Settlement Class Members. As such, a class action is a much more efficient use of judicial and party resources than multiple actions.  Further, absent a class action, members of the Settlement Class would almost certainly find the cost of individually litigating their claims to be prohibitive. Indeed, no other member of the proposed Settlement Class has brought any COBRA claims against Defendant, and thus, "there is no indication that any class member wants to individually control his or her own separate action." C*alloway v. Caraco Pharm. Labs., Ltd*., 287 F.R.D. 402, 408 (E.D. Mich. 2012).  In fact, many members of the proposed Settlement Class may not even be aware that Defendant has allegedly violated their rights under ERISA/COBRA's notice requirements. Where class members are unlikely to discover (and vindicate) injuries absent certification of a class, class treatment is superior to the alternatives.

In the end, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate for purposes of approving the Settlement.

**D.**    **Rule 23(e) Is Also Satisfied.**

After analyzing certification under Rule 23(a) and Rule 23(b)(3), when deciding whether to preliminary approval a class actions settlement, Courts in this Circuit also look to whether the proposed settlement satisfies Rule 23(e).  Under Rule 23(e), Fed.R.Civ.P., "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." The Agreement satisfies the applicable standards for approval under Rule 23(e) and Eleventh Circuit case law.

Rule 23(e) requires that a settlement agreement be "fair, reasonable, and adequate" before receiving approval. The following factors must be considered before determining whether that standard has been satisfied: (a) whether the class representatives and class counsel have adequately represented the class; (b) whether the agreement was negotiated at arm's length; (c)

the adequacy of the relief provided for the class; and (d) whether the proposal "treats class members equitably relative to each other." Fed. R. Civ. Proc. 23(e)(2)(A)-(D).  Clearing these standards is not a high bar, given that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992).  The Rule 23(e) factors are satisfied here.  Accordingly, Named Plaintiff respectfully requests this Court grant preliminary approval of the Agreement.

### 1.    The Class Representative and Class Counsel Have Adequately Represented the Class.

There is no question that Named Plaintiff and the undersigned have adequately represented the class.  This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.  *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met.  Named Plaintiff, John Baja, is adequate given that his interests are equivalent to those of the Settlement Class.   There is also no obvious conflict of interest between Named Plaintiff and the Settlement Class.  Named Plaintiff has the same interest as the Settlement Class members in prosecuting his claims.  He, along with Class Counsel, secured a high six-figure settlement from a highly sophisticated Defendant in favor of the class members he seeks to represent.

With respect to Class Counsel, as demonstrated in the attached declarations, the proposed attorneys have extensive class action experience, and have been appointed as class counsel in many class action cases, including the following recent COBRA class action cases: *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34); *Valdivieso v. Cushman & Wakefield, Inc*., M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersigned as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc*., M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the

settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).  Thus, the proposed settlement satisfies Rule 23(e)(2)'s first component, adequacy.

        **2.**       **The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations that were overseen by an experienced and impartial mediator who was selected and appointed by the Court.  (Doc. 28).  This also weighs in favor of approval.  *See Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

The proposed Settlement, and the record in this case, show that the Agreement was the product of extensive and detailed arm's length negotiations between the Parties and their counsel.  The Parties participated in mediation with Antonio Piazza during an all-day mediation at great expense to both sides—and with no promise Class Counsel would recover anything at all.  The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations to avoid costly and protracted litigation. Attorneys' fees were not discussed until the class members' recovery was decided upon.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. *See generally* Declarations of Luis A. Cabassa and Brandon J. Hill; *see also Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks").  Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. The Settlement Provides Adequate Relief to Class Members.

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The Settlement requires Defendant to pay $750,000 into a Settlement Account to resolve the claims at issue. This represents a gross recovery of approximately $19.32 per Settlement Class member ($750,000 ÷ 38,818 persons = $19.32) and a net recovery of approximately $9.72 (*see* note 2 *supra*). This recovery falls well within the range of reasonableness for settlement purposes. *See e.g., Vazquez v. Marriott International, Inc*., M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 settlement class); *Gilbert v. SunTrust Banks, Inc*., Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement in COBRA notice case in which each class member's gross recovery was $24 and net of $13). All Settlement Class members who do not opt out will share in the recovery, as they do not need to file a claim form to receive a settlement payment.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. Because this case settled not long after filing, Named Plaintiff had yet to survive class certification, summary judgment, and trial. Each of these phases of litigation presented serious risks, which the settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig*., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."). Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp*., 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The Gross Settlement amount in this Settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Agreement, the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the

Settlement Account, even if the amount is less than what could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the amounts it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. Named Plaintiff supports the Settlement. Class Counsel believes that the bulk of the other Settlement Class Members will have a favorable reaction to the Settlement and not object to it once they have been advised of the settlement terms through a Court-approved certification and Notice of Settlement.

      **4.**      **The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats Settlement Class Members equitably. In fact, they are treated identically. As set forth above, with the Settlement Class comprised of approximately 38,818 members, each Settlement Class Member who does not opt out of the Settlement will receive a gross settlement payment of approximately $19.32 and a net payment of $9.72. This a "claims paid" settlement. All class members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class members who do not opt out will simply receive checks after final approval. If settlement checks are not cashed, the Agreement provides for a donation to a *cy pres* recipient.

      **5.**      **Additional Considerations.**

In terms of the likelihood of success at trial, if Named Plaintiff had chosen to continue to litigate his claims, a successful outcome was not guaranteed. As discussed herein, Named Plaintiff faced significant risks with respect to liability, damages, and certification of a litigation class. With respect to liability, important issues remained to be decided upon the evidence presented. Defendant's motion to dismiss the litigation in its entirety has not been decided, and the Court did not have before it (and therefore did not consider) arguments Defendant would have raised at summary judgment. Named Plaintiff would have faced risks on class certification as well. In certain cases involving allegedly deficient COBRA notices, class certification has been denied. *See, e.g., Brown-Pfifer v. St. Vincent Health, Inc.,* 2007 U.S. Dist. LEXIS 69930, at *26 (S.D. Ind. Sept. 20, 2007); *Kane v. United Indep. Union Welfare Fund,* 1998 U.S. Dist. LEXIS, at *19 (E.D. Pa. Feb. 24, 1998). Thus, it was not guaranteed that the Court would have

certified a class.  To avoid the foregoing risks, it was reasonable for Named Plaintiff to settle the case at this juncture to ensure class-wide monetary and prospective relief for members of the Settlement Class.  *See Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

Additionally, with respect to the range of possible recovery, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002).  In other words, even if Named Plaintiff was able to prove that Defendant violated the COBRA or its accompanying regulations, Named Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all.

**6.     The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.**

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. In the absence of a settlement or a full grant of Defendant's motion to dismiss, Named Plaintiff would have had to take depositions, appear for his own deposition, engage in class certification motion practice, engage in summary judgment motion practice, prepare for trial, and present his case at a trial on the merits. The costs associated with these litigation activities would have been significant. Moreover, even if Named Plaintiff had won certification of a class and litigated the class claims to a successful conclusion, it is likely that Defendant would have appealed any judgment entered against it, resulting in further expense and delay.

Complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into a settlement now, Named Plaintiff saved precious time and costs, and avoided the risks associated with further litigation.

## IV.   THE COURT SHOULD APPROVE THE NOTICE TO SETTLEMENT CLASS MEMBERS.

In addition to reviewing the substance of the Parties' Agreement, the Court must ensure that notice is sent in a reasonable manner to all Settlement Class Members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1).  The "best notice" practicable under the circumstances includes individual notice to all potential class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).  That is precisely the type of notice contemplated here.

Under the Settlement, each member of the Settlement Class will be sent a short form Notice of Settlement (*see* Exhibit C) via first-class U.S. Mail, informing them of the terms of the Settlement and their right to opt out or object.  The short form Notice of Settlement will direct the Settlement Class Members to the Settlement Administrator's website where additional information will be provided.  The content of the long form Notice of Settlement (*see* Exhibit D), which will be available on the website, is also reasonable and appropriate.  Under Rule 23(c)(2)(B), the notice must clearly and concisely state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed short and long forms of the Notice of Settlement include all such information.  In addition, the Notice of Settlement clearly spells out the terms of the proposed Settlement, provides a website address where class members can obtain a copy of the Agreement and other relevant documents, and includes a phone number that class members may call if they have any questions. Accordingly, this Court should approve both the short and long forms of the Notice of Settlement, as both the contents of the notices and the methods of dissemination are reasonable.

## V.   CONCLUSION.

Based on the foregoing reasons, this Honorable Court should grant this Motion and enter an Order granting preliminary approval of the Parties' class action settlement.

**WHEREFORE**, Named Plaintiff hereby moves for this Court's preliminary approval of the Parties' class action Settlement; preliminarily certifying the proposed Settlement Class; designating Named Plaintiff as the settlement Class Representative and his attorneys as Class Counsel; approving the form and manner of class notice; authorizing the Settlement Administrator to disseminate the Notice of Settlement to the Settlement Class Members; setting a deadline to opt out or object and scheduling a final approval hearing no earlier than one hundred twenty (120) days after this Court's Preliminary Approval Order.  A proposed Order is attached as Exhibit A.

Dated this 18th day of February, 2022.

Respectfully submitted,

/s/ *Brandon J. Hill*
LUIS A. CABASSA
Florida Bar Number: 053643
Direct No.: 813-379-2565
BRANDON J. HILL
Florida Bar Number: 37061
Direct No.: 813-337-7992
WENZEL FENTON CABASSA, P.A.
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com

and

MARC R. EDELMAN, ESQ.
Fla. Bar No. 0096342
MORGAN & MORGAN, P.A.
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813-577-4722
Fax: 813-257-0572
Email: MEdelman@forthepeople.com

*Proposed Class Counsel and Attorneys for Named Plaintiff*

20

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record for all parties via the Court's CM/ECF filing system on this 18th day of February, 2022.

                                 /s/ *Brandon J. Hill*
                                 BRANDON J. HILL