UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:21-cv-61210-SINGHAL/VALLE

JOHN G. BAJA, individually
and on behalf of all others
similarly-situated,

    Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

    Defendant.
_____/

**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND SUPPORTING MEMORANDUM OF LAW**

The Class Representative, John G. Baja ("Plaintiff"), pursuant to Fed.R.Civ.P. 23, files this Unopposed Motion for Final Approval of the Parties' Class Action Settlement.[1] On June 29, 2022, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 41). In that Order, the Court found that Settlement terms are "fair, reasonable, and adequate." (*Id.*, p. 3, ¶ 10).

Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members. Importantly, <u>zero objections</u> were made by class members. (*See* attached Declaration of Noah Fiori from Settlement Administrator, American Legal Claims, ¶¶ 9-10) (hereinafter "Fiori Decl."). Not only that, only thirteen requests

---

[1] All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement"), filed on February 18, 2022. (*See* Doc. 41-A).

for exclusion were made. (*Id*.). Considering the large size of the Class, coupled with the fact this is a "claims paid" settlement (meaning all class members will automatically receive a check without having to file claims), and no funds revert to Defendant (instead they will be paid to *cy pres* recipient), the Settlement is an excellent outcome.

In sum, little has changed since the Court's Order granting the Plaintiff's Motion for preliminary approval, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A. In further support thereof, Plaintiff states as follows:

## I.      BACKGROUND.

Plaintiff filed a Class Action Complaint against Defendant in which he asserted claims for himself and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and the putative class against Defendant.

The terms of the Settlement Agreement were carefully modeled after similar COBRA class action settlements approved by other federal courts in this Circuit, including by Judge Scriven in *Rigney, et al. v. Target Corp.*, M.D. Case No. 8:19-cv-01432-MSS-JSS (March 14, 2021, Docs. 58-59), and *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127); Judge Merryday in *Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No. 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92); Judge Moody in *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34); and Judge Jung in *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No. 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63).

If approved here, the settlement provides for immediate relief to approximately 38,805 members of the proposed settlement class ("Settlement Class Members" or "Class Members"). Defendant has agreed to create a common fund of $750,000 for the Class Members. Settlement Class Members will not be required to take any action to receive a check, making it a "claims paid" settlement. The gross payment is approximately $19.33 per Settlement Class Member, with a net amount of approximately $10.10 per Settlement Class Member, amounts which are consistent with other COBRA class action settlements approved by this Court. There is no reverter of settlement funds to Defendant. Subject to Court approval, attorneys' fees and costs, and the cost of administration will also be paid from the fund along with a general release payment to John G. Baja. If any money remains in the Settlement Fund after these distributions and after Settlement Class Members have had 60 days to cash their settlement checks, left over funds shall be paid as a *cy pres* donation to a non-profit 501(c)(3) charity, Bay Area Legal Services. In sum, the proposed settlement is fair and reasonable, and final approval by the Court should be granted.

## II.  THE PROPOSED SETTLEMENT.

### A.  The Proposed Settlement Class.

As explained above, on June 29, 2022, this Court issued an order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 43.) In that Order, the Court found that Settlement terms are "fair, reasonable, and adequate." (Id. at ¶ 10.) Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members and thus far, zero have objected to the Settlement. Only thirteen people have asked to be excluded. Thus, the reaction by the Class Members could not be more

positive. The objection deadline expired on September 25, 2022. The Final Approval Hearing is set for November 4, 2022, at 11:00 a.m., to occur over Zoom.

**B.      Nature of Plaintiff's Claim.**

This is a putative class action brought by Named Plaintiff against Defendant under 29 C.F.R. § 2590.606–4(b)(4) et seq. and 29 U.S.C. § 1166(a). The lawsuit generally alleges that Defendant provided Named Plaintiff and other members of his putative class with a deficient COBRA Notice. More specifically, Named Plaintiff asserts that Defendant's COBRA Notice did not adequately inform him and the putative class how to exercise their rights to elect COBRA coverage because, in violation of 29 C.F.R. § 2590.606–4 et seq., Defendant's Notice: (i) included inaccurate and misleading threats of criminal penalties and fines; (ii) was not written in a manner calculated to be understood by the average plan participant; and (iii) did not name and provide contact information for the plan administrator. As a result of the alleged violations in the Complaint, Named Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, and costs, on behalf of himself and a putative class of all others similarly-situated.

**C.      Costco's Defenses.**

Had mediation been unsuccessful, Defendant had available to it myriad defenses to Named Plaintiff's allegations. Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to Named Plaintiff and/or any putative class member. In fact, as part of the Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in this case, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and Defendant denies that it has any liability whatsoever. The Agreement and this

Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity.  However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

**D.     Procedural History of Case.**

By way of further procedural background, Named Plaintiff John Baja filed his original Complaint on June 9, 2021.  (See Doc. 1).  Defendant filed a potentially dispositive Motion to Dismiss on July 21, 2021, raising a variety of arguments, including lack of Article III standing and failure to state a claim.  (See Doc. 7).  Before the Court ruled on Defendant's Motion to Dismiss, Named Plaintiff filed a First Amended Complaint which, in turn, mooted the first Motion to Dismiss filed by Defendant.  (See Docs. 14, 16).

The Parties conferred and filed the required Joint Scheduling Report on August 12, 2021. (Doc. 22).  The next day, the Court entered its Scheduling Order.  (Doc. 23).

Defendant filed a Motion to Dismiss the First Amended Complaint on August 18, 2021. (Doc. 24).  On September 1, 2021, Named Plaintiff filed a comprehensive response in opposition to the Motion to Dismiss.  (Doc. 25).  Defendant filed its reply brief on September 8, 2021.  (Doc. 27).  In the interim, Named Plaintiff propounded on Defendant class-wide written discovery on Defendant and began the process of scheduling depositions.  Specifically, Named Plaintiff propounded on Defendant written discovery requests, a Fed.R.Civ.P. 30(b)(6) deposition notice, as well as notice of intent to serve a third-party subpoena.

Shortly thereafter, on September 17, 2021, Defendant filed a Motion to Stay Discovery. (Doc. 28). Named Plaintiff filed his opposition on September 24, 2021. (Doc. 30). The Court denied Defendant's Motion to Stay Discovery on September 27, 2021. (Doc. 31). Following the denial of Defendant's Motion to Motion to Stay Discovery, counsel for both sides explored the possibility of an early class-wide resolution. Based on discussion between counsel for both sides, the Parties then agreed an early class-wide mediation may be productive at this point to try and resolve this case on a class basis.

As a result, on October 12, 2021, the Parties filed a Joint Motion to Stay these proceedings, including as to the Court's ruling on Defendant's pending Motion to Dismiss and as to the Parties' respective discovery obligations, pending completion of mediation. The Court granted that Motion on October 13, 2021 (see Doc. 35), and the case was stayed.

E.   **Mediation and Settlement.**

The Parties attended a mediation before a highly respected mediator, Antonio Piazza, on December 1, 2021. After extensive arm's length negotiations—between experienced counsel for an entire day and into the evening—a tentative deal was reached. The Agreement, if approved, will resolve all claims of Named Plaintiff and all Settlement Class Members in exchange for Defendant's agreement to pay $750,000.00 into the Settlement Account. This is a "claims paid" non-reversionary settlement. Every Settlement Class Member who did not timely opt out will receive a check for their respective Settlement Payment, without having to take any action, mailed to their last known address by the Settlement Administrator.

From the Settlement Account will be deducted amounts for the costs of settlement administration, Class Counsel's fees, and litigation costs, and any General Release Payment to Named Plaintiff, resulting in the "Net Settlement Proceeds," which will be allocated among the

approximately 38,805 Settlement Class Members equally on a pro rata basis. No funds revert to Defendant. Any funds that are unclaimed (which shall only arise if/when a check is mailed but then not timely cashed) shall revert to a mutually agreeable cy pres recipient. The Parties have selected Bay Area Legal Services, a 501(c)(3) non-profit legal aid organization, and will ask the Court to approve it as the cy pres recipient.

The Parties negotiated the proposed Settlement on a common fund basis, meaning that the Parties' settlement offers were inclusive of all attorneys' fees and costs, incentive awards, and administrative expenses. The Parties did not negotiate attorneys' fees until after agreeing on all terms related to the size of the common settlement fund and the class definition. With the Settlement Class comprised of approximately 38,805 members, each Settlement Class Member who does not opt out of the Settlement Class is entitled to a gross pro rata amount of the Settlement Account totaling approximately $19.33. If the requested amounts are granted for attorneys' fees and costs, administrative expenses, and Named Plaintiff's General Release Payment, the parties anticipate that each Settlement Class Member will receive a pro rata Settlement Payment from the Net Settlement Proceeds of approximately $10.10, an amount consistent with settlements in many other large COBRA notice class action cases like this one.

F.      **The Court's Order granting Preliminary Approval of the Settlement.**

On June 29, 2022, the Court granted Plaintiff's Unopposed Motion for Preliminary Approval of the Class-wide Settlement of the claims asserted against Defendant under 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4. (See Doc. 43.) Following entry of that Order, and as further explained by the attached sworn declaration from the Settlement Administrator, Notice was mailed out to the approximately 38,805 Settlement Class Members.

As set forth herein, the Settlement Class Members' response to the Notice of Settlement confirms that the Court's preliminary analysis was correct. The Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members and zero objected to the Settlement. And, only thirteen Settlement Class Members opted out of the Settlement. Accordingly, Plaintiff respectfully requests that this Court grant this Unopposed Motion for Attorneys' Fees and Costs.

G.  **The Class Member's Reactions to the Settlement.**

The Settlement Claims Administrator, American Legal Claim Services, LLC ("ALCS"), sent the short form Class Notice approved by the Court to each of the Settlement Class Members on or around July 27, 2022, via first-class mail. A total of 37,501 Class Notices were mailed to members of the Settlement Class. (Fiori Decl, ¶ 4). It is estimated that over 98% of the Settlement Class Members received the Class Notice. Zero objections were made. (*See* Fiori Decl, ¶9). Only thirteen requests for exclusion were received.[2] Thus, the class members' reactions to the parties' class action settlement was overwhelmingly positive.

### III. THE PROPOSED CLASS HAS BEEN CERTIFIED AND THE NOTICE PLAN APPROVED.

A.  **The Class Has Already Been Certified on a Preliminary Basis.**

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* Doc. 43). Since the Court's Preliminary Approval Order, no objections addressing class certification were received. Thus, there is no reason to re-

---

[2] The following individuals submitted exclusions and, thus, should not be bound by the settlement: Cassandra Galley, Esther Salas, Luigi Iannoe, Linoa Strub, Linda Schultz, Doreen Howard, Jordan Davis, Alish Scalese, Andrew Hamasaki, Sofia Khavin, Megan Fournier, Rebekah Deweese, and Katrina Lobos.

visit the Court's prior ruling. Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

**B.      Notice to the Class under Fed.R.Civ.P. 23(e)(1).**

Under Fed.R.Civ.P. 23(e)(1), Courts typically first analyze the notice to the class. As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator exceeded these requirements by sending out the Court-approved short form version of the notice to all class members via U.S. Mail. That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number, along with all of the other required information. Thus, notice was sufficient.

**C.      Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2).**

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter a Final Order approving the Class Action Settlement Agreement.

1. **The Class Representative and Class Counsel Have Adequately Represented the Class.**

There is no question that the Named Plaintiff, John G. Baja, and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, John G. Baja, is adequate given that his interests are equivalent to those of the Settlement Class. He was actively involved in this case from its inception, including providing the original documents supporting the allegations from the Complaint, providing input and approval to the filing of the Complaint, participating in settlement discussions, and also attending the Zoom mediation. Furthermore, there is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. He, along with his counsel, secured a six-figure settlement from a highly sophisticated Defendant in favor of the class members he represents.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the previously filed declarations by class counsel, *see* Docs. 22-5 (Hill Decl.), and 22-6 (Cabassa Decl.), and the attached declaration. Additionally, the undersigned have been appointed as class counsel in several other COBRA class action cases, including most recently in *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34). *See also Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersign as class counsel in a

COBRA notice class action), and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

2. **The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before A Neutral Mediator.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel. Not only that, the Parties used a highly respected mediator in this case, Antonio Piazza, one of the most respected class action mediators in the country. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator"). The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good-faith negotiations in an effort to avoid costly and protracted litigation.

11

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. **The Settlement Provides Adequate Relief to the Class Members.**

The relief to Settlement Class Members satisfies the third Rule 23(e)(2) factor. Members of the class will receive a *pro rata* gross amount of the settlement fund totaling approximately $19.33 and a net payment of approximately $10.10.[3] This recovery falls well within the range of reasonableness for settlement purposes. In fact, these amounts are consistent with COBRA class action settlements approved by other federal courts. *See e.g., Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 per class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018)

---

[3] $750,000 / 38,805 total Settlement Class Members = $19.33 gross pro rata recovery per Class Member; $750,000 - $98,097 for cost of administration - $10,000 general release payment - $250,000 attorneys' fees - $14,473.20 = $377,429.80 / 38,805 = $10.10 net pro rata recovery per Class Member.

(court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).

The Settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on the merits. Moreover, under the Settlement, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial;  (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).

There is a risk that Plaintiff and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. *See, e.g.*, *Ctr.*

*for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). Accordingly, the negotiated relief is more than adequate, and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. (*See* Doc. 24) Plaintiff still had to establish that class certification was warranted, and further demonstrate the merits of his claim, both individually and on behalf of any class. Each of these remaining phases of the litigation presents serious risks, which the Settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to

judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement, the Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than what could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiff also supports the Settlement as do the Class Members— evidenced by the complete lack of objections and the low number of exclusions received.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically. Moreover, this a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the Settlement Effective Date. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient.

If Plaintiff had chosen to continue to litigate his claims, a successful outcome was far from guaranteed. As discussed below, Plaintiff faced significant risks with respect to liability and damages. First, with respect to liability, important issues remained to be decided upon the evidence presented. Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether

15

or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiff was able to prove that Defendant violated the COBRA-notice regulation, Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all. Third, even if Plaintiff overcame an inevitable defense summary judgment motion, successfully had the case certified as a class under Rule 23 by the Court, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed in final adverse judgment, meaning Plaintiff would also need to survive any and all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members. *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5. The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

**D.      The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.**

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed the settlement agreement for which they seek final approval. Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the notice period during which class members were given sufficient time to be excluded and/or object. And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied because, in fact, to date there have been no objections made. Thus, each of these factors also weigh in favor of the Court granting final approval of the Parties' class action settlement.

## IV.      CONCLUSION.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion. A proposed Order is attached as Exhibit A.

## V.      LOCAL RULE 7.1(A)(3) CERTIFICATE.

The undersigned certifies that Plaintiff's counsel has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the Motion and, per the Parties' settlement agreement, Defendant does not oppose the relief sought in this Motion.

DATED this 25th day of October, 2022.

                                              Respectfully submitted,

*/s/Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnicholss@wfclaw.com
***Attorneys for Plaintiff and the Class***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 25th day of October, 2022, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                              */s/Brandon J. Hill*
                                              **BRANDON J. HILL**